Good morning, Your Honors, and may it please the Court, Jonathan Cohn for Appellant Bayer Healthcare. Your Honors, Plaintiff's own survey expert confirms that plaintiffs, that a large number, a great number of the absent class members are not deceived, that plaintiffs lack class-wide evidence of injury, and that thousands of mini-trials would be necessary to determine which class members, if any, can receive damages. The District Court did not address these issues, which defeat predominance, and a conflated deception with materiality, which is legal error. The Court should reverse, and we have two basic points. First, under circuit precedent, a class should not be certified when it's here. There are many absent class members who are not deceived. And second, the District Court did not address key evidence regarding deception and injury, which at the very least were in surremand. Starting with the first issue, plaintiffs agree that their expert surveys show that many consumers, at least 40 to 60 percent, and we'd say a lot more, but at least 40 to 60 percent, were not deceived, not confused, not misled. This is fatal to class certification. Under Olien, the Court recognized many times in Olien other cases, including Lytle, the case on which they heavily rely, that when a sizable portion of the class is not misled or many class members are not deceived, there shouldn't be class certification. How do we think about deception or being misled in the context of a case based on a price premium theory? That goes to the conjoint analysis, which they raised. And in essence, this is a new argument, because down below they recognized that the conjoint was just a damages model, not an injury model. Damages and injury, of course, are two different things. For injury, you have to have evidence, actual evidence, and you've got to show by a preponderance of the actual evidence that you satisfy the 23 requirements, including predominance. So is it your position that this theory cannot work to show injury? Like legally, it's just not a proper basis for showing injury? I would say a couple things. One, at the very least, you have to have actual evidence, which they don't have here. Here they have the unexecuted conjoint. It's not evidence. It wasn't run. For damages, having the unexecuted conjoint is sufficient. That's Lytle. But as this court has made clear, and the Supreme Court has made clear, for injury, you have to have actual evidence, and you have to show that the common issues predominate. So the first issue here is that their conjoint is not executed. They've not shown a price premium. The expert recognized there might not be a price premium. He does not know. He did not run the test. So they have no evidence, because it's an unexecuted conjoint, which cannot be good enough for injury. But second of all, this goes to damages, even if it was run. It goes to damages, not injury. To show injury in a deceptive advertisement case, you have to show deception. And Lytle, the case in which they heavily rely, recognized that. It says that when there's a sizable portion of the class that is not deceived, when there are many class members who are not deceived, you should not certify the class. The premium... Counsel, what's your best case for that proposition? Lytle, so their own case, Lytle recognizes that if a sizable portion is not deceived, you should not certify a class. It summarized the case law, including Stearns versus Ticketmaster, and other cases. Olien also recognized that if there's a great number of absent class members who are not injured, then you should not certify the class. And I'll note that other circuits have a different test. They have either the de minimis test, or they say that if there's less than 100% of the class being injured, you should not certify. This court has not gone that direction. It rejected the de minimis test in Olien, but it still recognized that if a great number of the class is not deceived, is not injured, you should not certify the class. Lytle used slightly different language, not great number, significant portion, but the point is the same. When a large number or many consumers are not injured, you should not certify the class. And in a deceptive advertising case, Your Honor, the purported injury is the deception. I want to put all this together, because I think you've made a couple of points that I'm not sure I fully thought about before. I understand the argument that the evidence, or the information that they're putting forward to their expert is the potential of evidence, not actual evidence of injury, if that's what they, I understand that argument. So let's set that aside for a second. Let's say they had actually done that analysis and come forward and said that some majority number of consumers out there wouldn't have bought this thing at this price had they realized that it wasn't natural. So in that context, that's still a price premium theory. What do you think that they have to show, if anything, as to deception or being misled? So if it's just the majority that paid more, that wouldn't be enough, because you still have, depending on the majority, but you still have a large minority of consumers who didn't pay more, a large minority of the consumers who are not deceived, and that's precisely what you have here, because they ran a survey. And their own survey expert recognized that she has no evidence that any absent class member- So what's the cutoff there? 75%? Like, and what case tells us what that cutoff is? So this court intentionally did not draw a numeric threshold in Olean or other cases. We know it's, de minimis is not enough to defeat class certification, a great number is fatal to class certification, it's somewhere between de minimis and great number. We would submit that even a 40 to 60% being uninjured, which is what they say it is, right? We think it's far more than 40 to 60% being uninjured, but 40 to 60% being uninjured, that is a great number. Whatever the line is between de minimis and great number, 40 to 60% is too much. District courts have followed it the same way. We cited some cases on page 31 of our brief, including Painters and Hall. Our amicus CHPA on page 8 of their brief cited more cases, lots of cases saying 40%, 33%. Those go too far. This court has not drawn a line, and it might not draw a line here, but we'd submit that when 40 to 60% of the class is not deceived, that goes too far, and again, we think it's far more than 60% because you have to look at the control, and that's what their own expert did. The expert said you have to look at the control, and if you look at the control, she said there's no evidence that any absent class member is deceived, none. So really it's far more than 60%, but I'm saying even if you interpret the evidence the way Plaintiff's counsel does, as opposed to their expert, you still have 40 to 60% of the class not being deceived, and that goes too far. They say that objective evidence suffices, which is certainly mostly true in state law, and it can be true in certain circumstances for Rule 23B3, even for Article 3, but not when the objective evidence shows that 40 to 60% of the class is not deceived. So in Lytle, in that case, there was near universal deception, and the court recognized it, and it distinguished cases like Stearns v. Ticketmaster, in which you had a sizable portion of the class not being deceived. Many class members were not misled, and that's the difference. So the question is, on what side of the line does this case fall? And we'd say it clearly falls on the side of you should not certify the class because a great number is not deceived. So we respectfully submit this court should reverse, but at the very least, the court should remand because the district court did not address key evidence. Number one, the district court did not address those perception surveys showing that most of the class is not deceived. The court conflated materiality with deception. Those are two separate elements. The court definitely didn't address this issue of the conjoint being sufficient because they didn't raise it below. They called it a damages model below. District court called it a damages model. This court in Lytle called it a damages model. It's a damages model. It's not an injury model. Damages and injury are different, but at the very least, it'd have to run the conjoint and try to demonstrate that somehow the damages model creates injury, though it can't. And the district court's materiality analysis, I mean, look, our product, we don't call it 100% natural because it's 98% natural. The only ingredients that are not natural, the micronutrients, like every multivitamin on the market, but it's 98% natural. Court didn't grapple with that either. So at the very least, there has to be a remand on it, but respectfully, under Olene, under Lytle, under Vann, this court should reverse outright. What do you do with McGee? I mean, I think there's language in McGee that suggests that this sort of price premium idea is an injury in fact construct. I would say that it is not in a deceptive advertisement case. It depends upon the case. So if there's a fraud in the market, for instance, or price fixing, which is a market injury, like in the antitrust context, perhaps it would. But in the context of deceptive advertisements, the sine qua non of a deceptive advertisement is deception. And that's why Lytle recognized that if a great number of the class is not deceived, you can't certify the class. But in any event, Your Honor, that would be an issue for another day in which there was evidence of an actual price premium that affected the entire class. Here, one, they haven't even run the conjoint, so they don't have evidence. Again, an unexecuted conjoint could be good enough for damages, not good enough for injury. They haven't run the conjoint, so they don't have the evidence. And second, we'd submit that when their own evidence shows that half the class is not deceived, you can't infer a class-wide increase in price because so many of the consumers are not deceived. How could there be a price premium across the entire class when half the class is not deceived in the least? So again, that could be an issue for another day. It's not an issue here. They didn't run the conjoint. And the basic element of injury in a case involving deception would be there being deception. And there's no deception here. I thought Judge Smith had a question, but apparently not. Do you want to reserve the remainder of your time? I would. Thank you very much, Your Honor. You bet. Good morning, Your Honors. May it please the Court. My name is Michael Reese, and I am counsel for the plaintiffs in the certified class. I think one thing we need to start off with is what the standard is here because all these arguments were made before, before the district court judge who considered all these arguments as well as considered the reams and reams, volumes and volumes of evidence. There was a great deal of an evidentiary record, multiple depositions. Not only was it fully briefed, there were replies, sur-replies, and sur-sur-replies. Did you present this price premium idea as a way to prove injury below? Yes, Your Honor. Where can you point us in the record where we'll find that? I believe it's in both Dr. Ingersoll's report, it's also in the complaint. This has always been a price premium theory for this case. I would just note also, I know Judge Smith in the Gonzales v. United States Immigration and Customs Enforcement Case 975F3rd788 pointed out, you know, we review, and I'm quoting you, Judge Smith, we review for abuse of discretion the district court's class rulings. I'd also note this case is on all fours with two recent decisions by this court. Lytle is one of them, which said you do not have to execute a conjoint analysis, it is accepted, reliable. Well, I guess I need you to take head on the argument from your opposing counsel that that's all related to when you're using this for damages purposes, not for injury purposes. I need you to address that. Right, sure. So a price premium is also a measure of injury. So let's say that no, you know, there's a case almost directly on point here, and it was, if you actually look at that case, it was, I believe, from 2024. And she wrote on multiple issues, but including class certification, and upheld a challenge to class certification, saying, if you look at the studies that were presented here, and I'm quoting from Judge Christen's decision in Montero, which is governing here, said 50 per 6 percent of the respondents said that the joint use claims, and this was a product, a consumer packaged product, not very unsimilar to one here, where the claims at issue, where the claims on the front of the packaging, and there, Judge Christen said, in denying a motion to decertify a class, and upholding class certification, said, this information is not 50 per 6 of the respondents said that the joint use claims were material to their purchasing decisions. We have similar type of evidence here, and I know, and that was a case in which a lot of evidence was presented, just like a lot of evidence was presented here. Not only expert surveys, which show that a majority of consumers were deceived, but also, you have internal documents, that was both in the Montero case, as well as here. You have internal documents from the regulatory division at Bayer, saying, do not make these  We do not agree that these natural claims should be made, because there are synthetics. The vitamins, which are the reason people buy these products, are synthetic. And also, I want to change the subject a little bit. Yes, Your Honor. Your opposing counsel made much of the percentage of the consumers who were not deceived. He took it much more than the 40 to 60%. What's your view as to, is there a cut off? Is there a line? What's the de minimis concept here that we should take into account? Sure. Well, I don't know if there's a bright line rule. I do know in similar type of litigation, particularly brought between companies, a Lanham Act case, but I also know of one Ninth Circuit decision. I apologize, I don't have the decision off the top of my head, but it's the ConAgra versus Briseno case from 2017. And even though it wasn't part of the order, it was part of the oral argument, which I was at, which said, you know, even 15 to 20% is enough to at least get past class certification. And here we have 55%. And so this is almost on all fours. I think it's actually 56% are experts said, thought this product was made with all natural ingredients and, in fact, was not. And that's common evidence. Right? So we have to go back. What is this all about? This is not a trial. This is class certification, which even for class certification, this is a lot of evidence that was developed and considered by the lower court, deposition transcripts, internal documents, expert reports, a great deal of evidence was considered. And that is why this court, as your Honor, Judge Smith pointed out, and it's not only in the Gonzalez case, but it's all over. Page 24 of our brief talks about it's an abusive discretion. You can only reverse class certification if it's an abusive discretion, if there's clear error. That certainly does not exist here because the district court carefully considered all the relevant evidence, read through the transcripts of the multiple deponents, considered internal documents, considered reports from experts on both sides and said, this is all common evidence. We're not determining one way or another who's going to win at trial because that's not the standard here. The standard is there's common evidence and the district court was correct and certainly did not abuse discretion or create clear error. And if one thing I think is very salient about my learned colleague's arguments, he didn't say the judge committed any type of error of law. He just wants to re-argue the facts. He wants to re-argue that, well, the interpretation that plaintiff's counsel and I, the judge, give to these internal memos which talk about Bayer saying natural products are really important. We do not want to take natural off the label because it's important to consumers. Where their internal regulatory are saying, do not put natural on the product because it has synthetics. All the vitamins in the product are synthetics. And even though it's not the record, I will point out there are vitamins that are made with all natural ingredients. So but again, this is not part of the record. That's not his argument. He's talking about what the plaintiff's reported in their surveys, what the plaintiff's expert testified to about this point. I understand, Your Honor. I apologize. I just want to respond to a comment he made. He said there's no such thing as vitamins made naturally. That's just not. But I don't think his argument is factual. Okay. I apologize, Your Honor. I missed the point. So but long story short, Your Honor, and as you can see from the record here, I think it's over 1,200 pages long. The district court considered that, talks about this evidence at length in its opinion, the multiple levels of evidence, maybe levels is not the right word, but the different types of evidence, and pointed out, said, on these issues that you need to prove for class certification, the plaintiffs do it multiple different ways. It's not just experts. It's also internal documents. Not just internal documents, but deposition testimony. So I guess, Your Honor, go back to your point as, you know, is there a bright line rule with respect to, is there a minimum threshold? There is no bright line rule. But it's certainly, this case is almost on all fours with Montero, because the numbers show that it's equivalent to about, and I'm rounding down, actually, to be conservative, 55%, I think 56.3% is the actual number, and in Montero, it was the same number. So in that case, actually went to a jury trial on behalf of certified class. The plaintiffs prevailed in that case. And Judge Christin, in upholding the verdict, also had to come rule on class certification, because of course, class certification can be challenged at any point in the litigation, and it was at that point after the case had actually gone to trial as well. I can go through more of the record, but I think we fully submitted a very thorough brief on this issue. I would just point out, again, the district court, there's great deference given to this district court, and there's a good reason for that. And I think that's actually a theme in many of the arguments that have been made before your honors today, is because they have the great burden to go through all of this information. They're the ones closest to the case. This is a case particularly involved because of the multiple depositions, internal documents, expert reports, and Judge Anello, who's a very learned judge, who's been on the bench, I think, over two decades, considered all that information. He cites this information in his order. His order is correct. It certainly is not an abuse of discretion. It is not clear error. You do not hear even defense counsel making those arguments, but that is the standard. And the class certification motion should not be reversed, because Judge Anello did not, in any way, abuse his discretion. I could go further and say he was actually . . . Counsel, how about if I just check in? Do we have any further questions, Judge Smith? I have none. Okay. Judge Forrest? Do you want to wrap up, please? I will. Seeing there's no further questions, we will submit on our brief. But again, once you look at the standard, not only do we think Judge Anello was correct and the class should be certified, but he certainly did not abuse his discretion. There's no clear error. And under Your Honor's rulings, Lytle is governing, Montero is governing. The other cases we cite, they point out the standard, and that is certainly met here. Thank you for Your Honor's time and attention to this matter. We'll hear rebuttal, please. Thank you very much, Your Honors. Notably, my colleague did not address O'Lean, which recognized that a great number of uninjured class members is fatal to certification. Excuse me. Bianca, could you fix the clock for us? Thank you. Go ahead. He did not address O'Lean. He did not address the district court decisions that interpret O'Lean. He did not address Article III, did not address Vann, which recognized there's a constitutional dimension to these issues. He did not . . . This is a lot of record in this case, and so you seem to be arguing that Judge Anello's errors from your perspective were not factual, but legal. And what is your best argument that Judge Anello committed legal error at this point in the proceeding? Three things. One, he did not address the fact that a great number of absent class members are not injured. That's legal. It goes precisely to 23B3. It goes to Article III, as the Supreme Court recognized in TransUnion. But forgive me, that's a factual issue, is it not? I'm asking, what legal error did he make? What case would you cite saying, he missed this? Obviously, when we look at abuse of discretion, errors of law are critical. And I'm asking you, what error of law would you refer us to? One, O'Lean and TransUnion. He didn't even mention Article III. There's an Article III issue he did not address. He did not address the fact there's a large number of absent class members. Two, he conflated deception with materiality. He made two issues, one, that's a legal error. Three, he did not address key evidence. He did not address Dr. Matthews' perception survey at all. This ties into Van, where the court remanded, because there was an exhibit that the district court did not consider. That exhibit showed only 18 class members out of thousands might not have been injured. But nonetheless, the court remanded for the district court to address that exhibit. Here's not just 18 out of thousands, it's at least 40 to 60 percent of the class that is not injured. And Judge Anello respectfully did not address that evidence at all. He did not cite it, did not discuss it. Instead, he conflated the issue of materiality with reliance. That is legal error. But also, disregarding Article III is legal error. Disregarding the precedence of this court is legal error. And I want to mention the case he cites, 15% being enough, that is for a state law violation that is not for 23B3, it is not for transunion, it is not for Article III. Sir, you're now over the extra time that we've given you, so could you wrap up, please? Unless your honors have further questions, I'd be happy to rest on the argument. Let me just check, Judge Forrest. No, it looks like we do not. Thank you for your argument, both of you. We'll take that matter under advisement. I'm going to take a recess for about five minutes, and then we'll be back to hear the Hageman-Hunday motor case. I'll be off record for five minutes. All rise. This court stands on recess.
judges: SMITH, CHRISTEN, FORREST